IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **BHARTI ROY** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: CBD-13-2956** |
| | * | |
| **THE BOARD OF COMMUNITY** | * | |
| **COLLEGE TRUSTEES OF** | * | |
| **MONTGOMERY COMMUNITY** | * | |
| **COLLEGE** | * | |
| | * | |
| **Defendant.** | * | |
| | ***** | |

## MEMORANDUM OPINION

Before this Court is Defendant the Board of Community College Trustees of

Montgomery Community College's Motion for Summary Judgment (ECF No. 41) ("Defendant's

Motion") and the opposition thereto.  The Court has reviewed Defendant's Motion, related

memoranda, and applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6

(D. Md.).  For the reasons presented below, the Court **GRANTS** in part and **DENIES** in part

Defendant's Motion.

**I.      Factual Background**

On November 28, 2008, Bharti Roy ("Plaintiff") began working in a probationary

position as an office assistant for the Board of Community College Trustees of Montgomery

Community College T/A Montgomery College ("Defendant").  Plaintiff's Amended Complaint

contends that on May 27, 2009, she was terminated in violation of Title VII of the Civil Rights

Act of 1991.  Plaintiff specifically claims national origin discrimination, religious discrimination, and failure to accommodate a religious practice.[1]  Plaintiff further contends that she is a practicing Hindu from India and that Defendant's reasons for terminating her were a pretext for discrimination based upon her religion and national origin.  Pl.'s Am. Compl. 8-10.

The parties agree that prior to her termination, Plaintiff was supervised by Dean Karen Roseberry from November to December, 2008, and by Assistant Dean Wayne Barbour from January to May, 2009.  The parties also agree that Plaintiff asked for and was granted a religious accommodation to arrive late on Thursdays in order for her to complete her morning Hindu prayers.

Defendant's Motion argues that this Court should grant summary judgment because Plaintiff's claims under Title VII are time barred.  Def's Mot. 14.  Defendant specifically asserts that Plaintiff did not exhaust her administrative remedies under Title VII for these disparate treatment claims.  Def's Mot. 15.  Defendant contends that Plaintiff fails to establish a prima facie case for each claim.  Def's Mot. 16-23.  Finally, Defendant argues that it terminated Plaintiff for legitimate non-discriminatory reasons.  Def's Mot. 21.

Defendant's Motion includes various exhibits.  One is a copy of Plaintiff's Equal Employment Opportunity Commission ("EEOC") charging document which Defendant argues shows that Plaintiff did not exhaust her administrative remedies.  Plaintiff's EEOC Charge, ECF No. 41-14.  Defendant also provides the deposition testimony of Ada Garcia-Casellas, a peer

---

[1] The Amended Complaint includes three claims. While this Court could require Plaintiff to further delineate her claims, the Federal Rules of Civil Procedure require only that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Defendant is clearly on notice regarding Plaintiff's claims of national origin discrimination, failure to accommodate a religious practice, and religious termination because Defendant has moved for summary judgment on these claims. As such, this Court will not require Plaintiff to file a second amended complaint but will treat Plaintiff's Amended Complaint as raising these three claims.

employee of Plaintiff's, and Ms. Roseberry.  Garcia-Casellas Dep. 24:14-25:14, Jan. 29, 2015,

ECF 41-10; Roseberry Dep. 106:2-107:3, Sep. 16, 2014, ECF No. 42-7.  Defendant also points to

a memo from Wayne Barbour to Vivian Lawyer, the school's Chief Human Resource Officer,

which Defendant argues shows it terminated Plaintiff for legitimate non-discriminatory reasons.

Barbour Memo 1, ECF No. 41-12.

      Plaintiff's memorandum in opposition ("Plaintiff's Opposition") argues that Plaintiff's

Title VII claim is not time barred and that she has established a prima facie case for her claims.

Pl.'s Opp'n 33-47.  Plaintiff also asserts that Defendant's alleged non-discriminatory reasons for

her termination are merely pretext for discrimination.  Pl. Opp'n 42.

      Plaintiff's Opposition includes Plaintiff's EEOC charging document which she argues

shows that she timely filed her complaint with the EEOC.  Plaintiff's EEOC Charge, ECF No.

41-14.  Plaintiff provides her affidavit which she contends establishes that she is from the

country of India and a practicing member of the Hindu religion.  Pl.'s Aff. 1, ECF 42-11.

Plaintiff refers to the testimony from her deposition transcript which she asserts demonstrates her

qualification for the position.  Pl.'s Dep. 18:6-20:17, Oct. 15, 2014, ECF No. 42-5.  Her

opposition contains a report from Defendant's office of Equity and Diversity which summarizes

its investigation into her discriminatory termination claims.  Equity and Diversity Investigation,

ECF No. 42-12.  Plaintiff cites to the job vacancy announcement for the position to demonstrate

that she met the qualifications for the position.  Job Vacancy Description 1, ECF No. 41-6.  She

offers Defendant's answer to an interrogatory to establish that she was replaced by an African

American.  Def.'s Answer to Interrog. 25, ECF No. 42-6.  She provides the deposition testimony

of Mr. Barbour to demonstrate that her performance was satisfactory.  Barbour Dep. 23:18-21;

32:2-11, Sept. 19, 2004, ECF No. 42-10.  Finally, she provides the deposition testimony of Ms.

Roseberry to demonstrate the procedures typically followed prior to terminating an employee. Roseberry Dep. 136:1-22; 192:15-22, Sep. 16, 2014, ECF No. 42-7.

## II.     Standard of Review

Under the Federal Rules of Civil Procedure, the Court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The Fourth Circuit has explained that a genuine dispute exists where "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F. 3d 295, 299 (4th Cir. 2001) (citation omitted). The Supreme Court has explained "[a]s to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    Analysis

### A.  Plaintiff's Claims are Not Time Barred.

Under Title VII, "[i]n order to maintain an action [of religious or national origin discrimination] . . . a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." *Chan v. Montgomery Cnty. Md.*, Civil No. PJM-12-1735, 2013 WL 1773574, at *2 (D. Md. Apr. 24, 2013) (citation omitted). As explained in *Chan* "[t]his period is extended to 300 days  . . .  when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Id.* (citation omitted). Here, Maryland proscribes termination on the basis of religion or national origin. *See* Md. Code Ann.,

State Gov't, §§ 20-606 (West 2014).  Plaintiff also initially filed her charge with the

Montgomery County Office of Human Rights, a Maryland deferral agency.  As such, Plaintiff

had 300 days from the date of her termination to file her claim with the EEOC.

Plaintiff timely filed with the EEOC.  Plaintiff alleges in her Amended Complaint that

she was terminated on May 27, 2009.  Pl.'s Am. Compl. 8.  Plaintiff filed her charge with the

EEOC on February 1, 2010—well within the 300 days allotted under the statute.  Therefore,

Plaintiff's claims are not time barred and are properly before this Court.

### B.  This Court Will Consider All Evidence Presented in Plaintiff's Amended Complaint and Plaintiff's Opposition.

Defendant argues that this Court cannot consider some of the factual allegations made by

Plaintiff in her EEOC filing, Plaintiff's Amended Complaint, and Plaintiff's Opposition because

they relate to events that occurred more than 300 days prior to her EEOC filing (or before April

7, 2009).  Specifically, Defendant contends that "any alleged 'denials' of a schedule

accommodation by Dr. Roseberry in December 2008" and "Dean Roseberry's March 19, 2009,

e-mail regarding Plaintiff's late arrival on Thursday . . . are procedurally barred and cannot be

considered."  Def.'s  Mot. 14–15.

However, the Supreme Court has explained that Title VII does not "bar an employee

from using . . . prior acts as background evidence in support of a timely claim" even when those

acts occur outside of the statutory window.  *National R.R. Passenger Corp., v. Morgan*, 536 U.S.

101, 113 (2002).  Because Plaintiff's claim was timely, this Court will consider the alleged

denial of a schedule accommodation and the email regarding late arrival as background evidence

in support of Plaintiff's claim.

### C.  A Reasonable Jury Could Find that Plaintiff has Established a Prima Facie Case for National Origin Discrimination.

Plaintiff does not contend that there is direct evidence of discrimination.  In the absence of direct evidence of discrimination, to make a prima facie case for discriminatory termination on the basis of national origin, a plaintiff must demonstrate that:

> (1) [h]e is a member of a protected class;
> (2) he was discharged;
> (3) at the time of his discharge he was performing his job at a level that met his employer's legitimate expectations; and
> (4) that following his discharge, he was replaced by someone of comparable qualifications outside the protected class.

*Khan v. Popeyes of Md., Inc.*, 179 F. Supp. 2d 548, 553 (D. Md. 2002).  If a plaintiff establishes a prima facie case, the burden "shift[s] to the employer to articulate some legitimate, non-discriminatory reason" for the adverse employment action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  However, this burden, "is a burden of production, not persuasion." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).   If the employer provides any legitimate non-discriminatory reason for the adverse employment action, the plaintiff must then prove by a preponderance of the evidence that the offered reason is merely a pretext for the discriminatory action.  *Id.*

#### 1.  A reasonable jury could find that Plaintiff has established that she is a member of a protected group.

Defendant contends that Plaintiff has failed to establish the first element as "[h]er EEOC charge does not even identify her home country."  Def.'s Mot. 16.  Plaintiff alleges in her EEOC charge that she is "of South Asian [descent]."  Pl.'s EEOC Charge 1.  However, she states in her Amended Complaint and in an affidavit that she is from India.  Pl.'s Am. Compl. 8; Pl.'s Aff. 1.

The Fourth Circuit has explained that "the claims raised under Title VII [cannot] exceed

the scope of the EEOC charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). However, because "lawyers do not typically complete the administrative charges," courts are to "construe [EEOC charges] liberally," and "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.* (citation omitted). Plaintiff's assertion in her Amended Complaint and affidavit that she is from India are reasonably related to her original claim from her EEOC filing that she is of South Asian descent. Reviewing the Amended Complaint and affidavit, a reasonable jury could conclude that Plaintiff has demonstrated that she is a member of a protected class.

> **2.     A reasonable jury could find that Plaintiff was performing her job satisfactorily when discharged.**

Defendant contends that Plaintiff "has not established that her job performance met her employer's expectation and was satisfactory." Def.'s Mot. 18. This Court has previously explained that when considering whether a plaintiff has established that their job performance was satisfactory, "[w]hat matters is not the employee's self-perception regarding . . . his job performance, but the perception of the decision maker." *Mungro v. Giant Foods, Inc.*, 187 F. Supp. 2d 518, 522 (D. Md. 2002) (citation omitted). To support the notion that Plaintiff was not qualified, Defendant first cites to the deposition testimony of Ms. Garcia-Casellas, a peer employee, in which Ms. Garcia-Casellas alleges that Plaintiff was habitually late and made many mistakes in her work. Garcia-Casellas Dep. 24:14-25:14. However, Ms. Garcia-Casellas was not a "decision maker," and thus this evidence is unavailing. *Mungro*, 187 F. Supp. 2d at 522.

Defendant next argues that because Plaintiff was hired and fired by Ms. Roseberry, Defendant benefits from a presumption that Plaintiff's termination was due to performance

issues and not discrimination.  Defendant is right that "in cases where the hirer and the firer are

the same individual and the termination of the employment occurs within a relatively short time

span following the hiring, a strong inference exists that discrimination was not a determining

factor for the adverse action taken by the employer."  *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.

1991) (citation omitted).  In *Proud*, the plaintiff, who eventually sued for age discrimination,

applied for a position and was selected from a pool of seven individuals by an accounting officer.

*Id.* at 796.  The accounting officer was aware of and considered the plaintiff's age in his

determination.  *Id.*  The same accounting officer, alone, requested that the plaintiff be

discharged.  *Id.* at 797.  Here, unlike in *Proud*, Ms. Roseberry was not the only hiring or firing

party.  Instead, a panel of individuals or committee, which Ms. Roseberry was not a part of,

interviewed and recommended Plaintiff for the position.  Roseberry Dep. 16:10-17:22; 21:15-21.

Ms. Roseberry in fact did not look at Plaintiff's paperwork, and the Acting Associate Dean was

the person who signed the paperwork.  Roseberry Dep. 17:1-11.  There is also no evidence that

Ms. Roseberry was aware of Plaintiff's national origin when the committee decided to hire

Plaintiff.  At the back end, Ms. Roseberry did not terminate Plaintiff herself.  Instead, she drafted

the memo that led Mr. Barbour to recommend that Plaintiff be terminated.  *See* Roseberry Memo

to Wayne Barbour, dated April 9, 2009, ECF No. 42-16.  Given these factual discrepancies,

Defendant is not entitled to an "inference . . . that discrimination was not a determining factor for

the adverse action taken by the employer."  *Proud*, 945 F.2d at 797.

　　　　　Defendant next cites the deposition testimony of Ms. Roseberry, who supervised Plaintiff

for two months in 2008 and worked with Plaintiff on two projects in 2009.  In her testimony, Ms.

Roseberry indicated that she personally observed that Plaintiff was sometimes late, did not

follow some of Ms. Roseberry's directions, and provided a product that required edits. Roseberry Dep. 106:2-107:3.  Finally, Defendant points to a memo by Mr. Barbour, who supervised Plaintiff for five months in 2009, in which he recommends Plaintiff's termination.  In that memo, Mr. Barbour writes that Plaintiff "consistently arrived to work 30 to 45 minutes late," showed "a lack of good decision-making" when she attended a college event at the same time that she was needed at the office, "submitted an unusual number of requests to attend professional development workshops and take leave-without-pay," acted beyond her authority in telling a student worker that the student was not needed at an event, demonstrated "difficulty following directions," and demonstrated difficulty "following through on . . . assignments." Barbour Memo 1-2.

Plaintiff provides evidence that her job performance was satisfactory.  She first offers her own affidavit in which she states that she felt she was performing well.  Pl.'s Aff. 3.  However, because Plaintiff was not a "decision maker," this evidence is unavailing.  *Mungro*, 187 F. Supp. 2d at 522.  Plaintiff also cites the Equity and Diversity as quoting Mr. Barbour as saying he did not have or provide any negative feedback regarding Plaintiff in his sporadic check-ins with her between January and April of that year.  Equity and Diversity Investigation 18.  Plaintiff further provides deposition testimony from Mr. Barbour in which he admits that after an initial meeting with Plaintiff regarding tardiness, "she took care of any tardiness issues."  Barbour Dep. 23:18-21.  Mr. Barbour also testifies that he never recalled "criticiz[ing] Ms. Roy in her performance in any way between January and April 2009."  *Id.* at 32:2-11.  Finally, as to his memo, Mr. Barbour admits that the contents of his memo came largely from content written by Ms. Roseberry. Barbour Dep. 43:8-22.

Reviewing this evidence together, Plaintiff has presented sufficient factual evidence for a reasonable jury to find that she was performing her job satisfactorily when discharged.  First, as to Ms. Roseberry's criticisms regarding Plaintiff's performance and punctuality in 2009, a reasonable jury could find that as her supervisor, Mr. Barbour was in a better position to asses Plaintiff's performance.  A reasonable jury could also find that the fact that Mr. Barbour stated that he neither had nor provided negative feedback in sporadic meetings throughout his supervision indicates that Plaintiff was performing adequately.  Finally, a reasonably jury could find that Mr. Barbour's silence by not commenting or criticizing Plaintiff's work performance, contradicts the contents of his memo, and the fact that much of his memo was taken from memos written by Ms. Roseberry, suggests that the memo is not a true reflection of Plaintiff's performance.  For the foregoing reasons, Plaintiff has provided sufficient evidence to demonstrate that she was performing adequately.

### 3. A reasonable jury could find that Plaintiff was replaced by a comparable individual outside of the protected class.

The fourth element of the prima facie case is that ". . . following h[er] discharge, [s]he was replaced by someone of comparable qualifications outside the protected class."  *Khan*, 179 F. Supp. 2d  at 553.  Plaintiff can make this showing my demonstrating that she was qualified for the position when hired and was replaced by an individual outside of the protected class.

To prove that she was qualified, Plaintiff cites to the job announcement for the position which states that the position requires "high school graduation or G.E.D.," that "college level coursework is preferred," and that comfort working in academic office environments and working with modern office software is required.  Job Vacancy Description 1.  Plaintiff cites to her own deposition testimony in which she alleges that she has a Masters and a Ph.D. degree, and

has worked as an assistant professor and adjunct professor.  Pl.'s Dep. 18:6-20:17.  Plaintiff has

provided sufficient evidence for a reasonable jury to find that she was qualified for the position

when she was hired.

To prove that she was replaced by somebody outside of the protected class, Plaintiff

provides Defendant's answer to an interrogatory in which Defendant states that "Ms. Stephanie

Curtis, a person of African American heritage, was hired in this position [to replace Plaintiff]."

Def.'s Answer to Interrog. 2.  The Court finds that Plaintiff has provided sufficient evidence such

that a reasonable jury could find that a person outside of the protected class replaced Plaintiff.

For the foregoing reasons, the Court finds that a reasonable jury could find that Plaintiff

has proven her prima facie case for employment discrimination on the basis of national origin.

### D.  A Reasonable Jury Could Find that Defendant's Non-Discriminatory Reasons for Firing Plaintiff Are a Pretext For National Origin Discrimination.

Because a reasonable jury could find that Plaintiff has presented a prima facie case for

national origin discrimination, "the burden shifts to the employer to articulate a legitimate, non-

discriminatory reason for the adverse employment action."  *McDonnell Douglas*, 411 U.S. at

802.  This burden, "is a burden of production, not persuasion."  *Holland*, 487 F.3d at 214.   If

Defendant meets this burden then Plaintiff "must be afforded the opportunity to prove by a

preponderance of the evidence that the legitimate reasons offered by [Defendant] were not its

true reasons, but were a pretext for the discrimination."  *Khan*, 179 F. Supp. 2d  at 553.

#### 1.  A reasonable jury could find that Defendant has provided a legitimate non-discriminatory reason for terminating Plaintiff.

Defendant contends that it possessed legitimate, non-discriminatory reasons for

terminating Plaintiff's probationary status.  In support of this contention Defendant cites to the

Barbour Memo wherein Mr. Barbour writes that Plaintiff was routinely tardy, overstepped her

bounds in telling a student that he or she was not needed at an event when "[Plaintiff] had no basis or authority to make such a decision," and has "difficulty following directions" and "following through on . . . assignments."  Barbour Memo 1-2.  Based on this evidence a reasonable jury could find that Defendant has properly alleged legitimate non-discriminatory reasons for terminating Plaintiff's probationary status.

> **2.    A reasonable jury could find that Plaintiff has demonstrated that Defendant's reasons for termination are mere pretext.**

Since Defendant has alleged non-discriminatory reasons for terminating Plaintiff, the burden shifts to Plaintiff to offer evidence that Defendant's alleged reasons are a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  To this end, Plaintiff offers the Equity and Diversity Investigation wherein Barbour is quoted as saying that he did not have or provide any negative feedback related to Plaintiff's performance in his meetings with her between January and April of 2009.  Equity and Diversity Investigation 18.  Plaintiff also provides Mr. Barbour's deposition testimony in which he admits that he did not have any type of discussions where he was reprimanding the Plaintiff or criticizing her for her work performance.  Barbour Dep. 36:6-17, Sept. 19, 2004.

Mr. Barbour's deposition testimony also calls into question the claims in the Barbour Memo.  Specifically, while the Barbour Memo describes Plaintiff as having continued to arrive late throughout Mr. Barbour's supervision, Mr. Barbour admits in his testimony that after an initial meeting with Plaintiff in January, "she took care of any tardiness issues."  Barbour Dep. 23:18-21.  While the Barbour Memo suggests that Plaintiff overstepped her bounds in telling a student that he or she did not need to attend an event, Mr. Barbour indicates in his testimony that he believes "she did have that authority and ability to supervise and assign student assistance." *Id.* at 56:9-12.

Finally, Plaintiff offers the deposition testimony of Dean Roseberry to argue that Defendant should have discussed any issues with Plaintiff's performance prior to terminating her.  Plaintiff maintains that "[t]he failure to follow these procedures and the lack of any notice given to Plaintiff of performance deficiencies before her termination is strong evidence of both discrimination and pretext."  Pl.'s Opp'n 29-30.  Regarding these procedures, she quotes Dean Roseberry as saying that

> the standard procedure for anyone that is in difficulty with their assignments would be to first give oral counsel, oral conference on the issues involved.  Second level would be written notices as it has not been addressed and then the third, usually we call HR and say how bad is this and we might meet with an HR representative, they might meet with their union but it is progressive discipline.

Roseberry Dep. 192:15-22.  Plaintiff alleges that she received no oral counsel "about any performance issues."  Pl.'s Dep. 3.  Defendant does not contest this allegation and Mr. Barbour, himself, admits that he never provided any negative feedback or criticism to Plaintiff.  Barbour Dep. 36:6-17.

Reviewing this evidence together, a reasonable jury could find the Barbour Memo does not reflect Plaintiff's actual job performance and was a mere pretext for discrimination.  A reasonable jury could also find that the fact that it was Defendant's policy to provide written and oral feedback to struggling employees prior to termination and that Defendant did not provide negative feedback to Plaintiff prior to her termination suggests that Plaintiff was performing adequately.

Thus, Plaintiff has provided sufficient factual evidence for a reasonable jury to find that the reasons Defendant provides for her termination are a pretext for discrimination.

### E.  A Reasonable Jury Could Not Conclude that Plaintiff has Established a Prima Facie Case of Religious Termination.

The elements of a prima facie case for religious termination are the same as those for national origin discrimination.  Specifically, in the absence of direct evidence of discrimination, to make a prima facie case for discriminatory termination on the basis of religion, a plaintiff must demonstrate that:

> (1) [h]e is a member of a protected class;
> (2) he was discharged;
> (3) at the time of his discharge he was performing his job at a level that met his employer's legitimate expectations; and
> (4) that following his discharge, he was replaced by someone of comparable qualifications outside the protected class.

*Kahn*, 179 F. Supp. 2d at 553.  Plaintiff established the first element by stating, in her affidavit, that she is a practicing Hindu.  Pl.'s Aff. 1.  Neither party contests that she was discharged.  And, as discussed above, Plaintiff has provided sufficient evidence for a reasonable jury to find that she was performing her job adequately when discharged.

However, Plaintiff has not provided sufficient evidence for a reasonable jury to conclude she "was replaced by someone of comparable qualifications outside the protected class." *Khan*, 179 F. Supp. 2d  at 553.  To satisfy this element, Plaintiff points out that she is Hindu and also quotes Defendant as saying that Ms. Curtis's "religion is unknown."  Def.'s Answer to Interrog. 2.  This is insufficient factual evidence for a reasonable jury to conclude that Plaintiff was replaced by an individual who was not Hindu.  Because a reasonable jury could not conclude that Plaintiff has made a prima facie case of religious termination, Defendant is entitled to summary judgment on Plaintiff's claim of religious termination.

**F.  A Reasonable Jury Could Find that Plaintiff has Demonstrated Defendant Failed to Accommodate Plaintiff's Religious Practice.**

Under Title VII, "[t]o establish a prima facie religious accommodation claim, [a] plaintiff must prove that:

> (1) she has a bona fide religious belief that conflicts with an employment requirement,
> (2) she informed the employer of this belief, and
> (3) she was disciplined for failure to comply with the conflicting employment requirement."

*Abdelkader v. Sears Roebuck & Co.*, 780 F. Supp. 2d 389, 393-94 (D. Md. 2011).  If the employee establishes a prima facie case, the burden shifts to the employer to show either "that it provided the plaintiff with a reasonable accommodation" or "that such accommodation was not provided because it would have caused an undue hardship" — that is, it would have resulted in more than a de minimis cost to the employer.  *Id.* at 394; *Trans World Airlines v. Hardison*, 432 U.S. 63, 84 (1977).

**1.   A reasonable jury could find that Plaintiff has established a *bona fide* religious belief.**

Defendant claims that Plaintiff fails to establish the first element because "[p]laintiff's own testimony . . . is unclear whether Plaintiff has established a *bona fide* religious belief."  Def.'s Mot. 24.  In support of this contention Defendant offers, without any reference to the record, Plaintiff's alleged testimony in which she purportedly states "the morning ritual could be performed whenever she woke up, although she thought it should start at sunrise."  Def.'s Mot. 24.  However, Plaintiff alleges in her affidavit, that she "is a female from the country of India and is a practicing member of the Hindu religion" and that her "religious beliefs as a Hindu require [her] on Thursday mornings . . . to perform a special prayer at sunrise for two to three hours."  Pl.'s Aff. 1.  The Court finds that Plaintiff has provided sufficient evidence for a reasonable jury to conclude that she has a *bona fide* religious belief.

**2.      A reasonable jury could find that Plaintiff was disciplined for failure to comply with the employment requirement.**

Defendant contends that Plaintiff has not satisfied the third element because "[p]laintiff received the requested accommodation" and "was never disciplined for using this alternative schedule."  Def.'s Mot. 24 (emphasis in original).  Plaintiff does not contest Defendant's allegation that she technically received the accommodation.  Rather, Plaintiff contends that she effectively did not receive it and was terminated for arriving late on Thursdays in accordance with her religious accommodation.  Plaintiff specifically claims that Dean Roseberry wrote an email to Wayne Barbour criticizing Plaintiff for arriving late on Thursday, March 19, 2009, in accordance with her accommodation.  The email reads:

> I called CIMS at 9:00 to find out if Joy & Ada were working today, and no one answered. I walked over there at 9:15 and Shirley was sitting outside, waiting for Bharti to arrive and let her in. We called security and she is there now.
> Have you heard from Bharti? Shirley says she doesn't take her start-time very seriously. When is her evaluation? Do you have a record of tardiness? Unless she called in, she should be written up for today.
> Let me know and I'll do it.

Roseberry Email 1, ECF No. 42-15.  In addition, Plaintiff offers the Barbour Memo wherein Mr. Barbour writes that "[w]e need someone . . . who is committed to arriving to work as required."  Barbour Memo 1.  Finally, Plaintiff points to Mr. Barbour's deposition testimony in which he admits that outside of her accommodated late arrivals, tardiness was not a consistent issue to his knowledge.  Barbour Dep. 23:18-21; 51:10-12.  Reviewing these materials, a reasonable jury could find that Defendant terminated Plaintiff for doing exactly what it told Plaintiff she could do—arrive late on Thursdays.  As such, the Court finds that Plaintiff has provided sufficient factual evidence such that a reasonable jury could find that she was disciplined for failing to comply with the employment requirement of arriving at 8:30 on Thursdays.

For the foregoing reasons, a reasonable jury could find that Plaintiff has established a prima facie case for failure to accommodate her religious practice and Defendant is not entitled to summary judgment on this claim.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.  Specifically, the Court enters summary judgment in Defendant's favor as to Claim II (religious termination claim).  This ruling does not affect Claims I and III (national origin and failure to accommodate a religious practice claim).

September 17, 2015

_____/s/_____
Charles B. Day
United States Magistrate Judge

CBD/sdh/sjw